## (April 6, 1982)

■ MONGELLI CARTING COMPANY, INC., Respondent-Appellant, v NASSAU INSURANCE COMPANY, Appellant-Respondent, and NORMAN LEVINE ASSOCIATES, INC., Respondent. — Order, Supreme Court, Bronx County (Bloustein, J.), entered December 10, 1980, made posttrial, setting aside the verdict of a jury, and directing a new trial, unanimously reversed, on the law and the facts, the verdict reinstated, and judgment directed to be entered in accordance therewith, with one bill of costs against defendant-respondent Norman Levine Associates, Inc., and in favor of plaintiff-respondent-appellant Mongelli Carting Company, Inc. and defendant-appellant-respondent Nassau Insurance Company. The Mongelli corporation, a commercial waste remover, formed a

new firm, Equality Carting Company, to engage in various aspects of demolition and rehabilitation of buildings. A compactor truck was acquired to be used for the Equality enterprise, purchased at a cost of $61,500, plus finance charges of over $15,000 by the Mongelli company because the new company had not yet established credit. The purchase was financed by General Electric Credit Corporation, which consented to a transfer to Equality and then back again to Mongelli. The Levine company, broker, was directed to procure insurance coverage for the truck, and was informed that General Electric was a lienor. The coverage was procured from defendant Nassau, the cost of the vehicle being stated as $65,000. When the truck was stolen in July, 1978, Nassau refused to pay, and Mongelli sued both Nassau and Levine. General Electric was not originally listed as a lienor, and such a listing was not requested until after the loss. Nassau, relying on the face of the policy which listed no "loss payee," invoked a clause which provided that coverage would not apply "if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared or described in this policy." The complaint sets out three causes, one for $65,000 as stated in the policy, another for $5,000 for additional late and related charges which Mongelli could not prepay to save interest because of having been unpaid itself by the insurer, and a third cause for over $15,000 incurred in finance charges for a replacement vehicle. Levine was accused of negligence in a fourth cause in failing to list General Electric as loss payee and in not notifying Nassau of the latter's interest. Nassau interposed two affirmative defenses: that the exclusion rendered the policy a nullity; also that Mongelli's breach voided it. The jury's verdict was for Mongelli against the broker, Levine, and in favor of Nassau as against Mongelli. The truck's value was set by the jury at $65,000 after an instruction that it could accept plaintiff's expert's valuation in that sum and that it could also consider depreciation, etc., in arriving at a value. The jury was also instructed as to the meaning of section 150 of the Insurance Law[*] in respect of warranties under contracts of insurance. The court set aside the verdict, declaring that the jury had not followed that section and, as well, had not considered depreciation, and directed a new trial unless Mongelli accepted $50,000 for the loss of its truck, payable jointly by both Nassau and Levine. The jury had obviously accepted the appraisal by plaintiff's expert, as, under the court's instruction, it had a right to do. The verdict, then, could not have been excessive. The expert had not been contradicted by any other evidence of value, and his testimony was specifically as to the truck's worth. As to the court's criticism of the jury for not following section 150, the jury obviously concluded that the failure to list General Electric as a loss payee did "materi-

[*] In pertinent part, section 150 reads: "§ 150. Warranty defined; effect of breach. 1. The term 'warranty' as used in this section, means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer's liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract. The term 'occurrence of loss, damage, or injury' shall be deemed to include the occurrence of death, disability, injury, or any other contingency insured against, and the term 'risk' shall be deemed to include both physical and moral hazards. 2. No breach of warranty shall avoid an insurance contract or defeat recovery thereunder unless such breach materially increased the risk of loss, damage or injury within the coverage of the contract. If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, no breach of warranty shall avoid such contract or defeat recovery thereunder with respect to any kind or kinds of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty."

ally increase[d] the risk of loss, damage or injury within the coverage of the contract" and that that breach did, therefore, "avoid [the] contract" (Insurance Law, § 150, subd 2). Obviously, it accepted the insurer's affirmative defense to the effect that the presence of an undisclosed lienor as loss payee excluded liability. Mongelli had moved to dismiss this defense, which the court denied, thus holding it valid. The jury quite logically sustained the defense on what it found the facts to be. The court was in error in setting aside a logical verdict. The verdict was wholly consistent. Section 150 was followed to void the insurance policy. The finding against the broker indicated its responsibility for failure to advise the insurer of the existence of the lienor-loss payee. The amount awarded to plaintiff for its loss due to the broker's negligence was the amount which the jury believed plaintiff was deprived of as the result of the policy being voided. The statement made by the court in setting the verdict aside, that payment of the loss should be made jointly by both defendants, was completely illogical: if Nassau was liable under the policy, that would have exculpated the broker because there would have been no damage to plaintiff; if the broker was liable, it could only be on the theory that its negligence would have brought about the complete exemption from liability of the insurer. The logical verdict should therefore be left intact. Concur — Murphy, P. J., Ross, Markewich, Bloom and Lynch, JJ.